772 P.2d 1298

**PAGE & WIRTZ CONSTRUCTION COMPANY, Plaintiff,**

v.

**C & G PRESTRESSED CONCRETE, INC.,**
Defendant–Counterclaimant–
Cross–Claimant–Appellant,

v.

**T. Pat SMITH, Charles Daboub, and Howard A. Brown, d/b/a Albuquerque Joint Venture No. 1, a Texas general partnership, Garkski's Loft, Inc., Las Pappas, Inc., a Texas corporation, and El Paso Federal Savings & Loan Association, Defendants–Appellees.**

No. 17677.

Supreme Court of New Mexico.

April 25, 1989.

Miller, Stratvert, Torgerson & Schlenker, Dean G. Constantine, H. Kevin Haight, Albuquerque, for appellant.

Dean S. Hoover, Dallas, Tex., pro se.

Myrtle McDonald, Lubbock, Tex., pro se.

T. Pat Smith, Dallas, Tex., pro se.

Charles Daboub, Dallas, Tex., pro se.

Howard A. Brown, Dallas, Tex., pro se.

Keleher & McLeod, Richard L. Alvidrez, Albuquerque, for El Paso Federal.

## OPINION

STOWERS, Justice.

This is an appeal by cross-claimant/defendant-appellant, C & G Prestressed Concrete, Inc. (C & G), from an order granting summary judgment in favor of defendants, T. Pat Smith, Charles Daboub, Howard A. Brown all d/b/a Albuquerque Joint Venture No. 1, defendant Gardski's Loft, Inc., and defendant Las Pappas, Inc., (all of whom will be referred to collectively as Gardski's defendants), and defendant-appellee, El Paso Federal Savings and Loan Association (El Paso).

C & G, the Gardski's defendants and El Paso are defendants in a mechanics' and materialmen's lien foreclosure lawsuit filed by plaintiff, Page & Wirtz Construction Company (Page & Wirtz). C & G brought cross-claims against the Gardski's defendants and El Paso based on the foreclosure

of its materialmen's lien, a quantum meruit claim for the reasonable value of materials furnished, and a claim of third-party beneficiary status. The district court granted Gardski's defendants' and El Paso's motion for summary judgment against C & G, and dismissed all claims of C & G against these defendants with prejudice. We reverse the district court and enter judgment in favor of C & G on its materialmen's lien. Further, we remand back to the trial court for a determination of the priority of liens and interests on the subject property and for a determination of C & G's attorney's fees pursuant to NMSA 1978, Section 48-2-14 (Repl.Pamp.1987), at the trial and appellate level.

This lawsuit arises from the construction of Gardski's Loft Restaurant in Albuquerque, New Mexico. The owner of that property was Albuquerque Joint Venture No. 1, a partnership consisting of T. Pat Smith, Charles Daboub and Howard A. Brown. Albuquerque Joint Venture leased the property to Gardski's Loft, Inc. for the purpose of building and operating a restaurant known as Gardski's Loft. El Paso, a Texas savings and loan, provided the financing for the purchase of the land and construction of the restaurant. From the record it appears that El Paso has a "mortgage interest in the property owned by Albuquerque Joint Venture No. 1." Gardski's Loft, Inc. contracted with Gurss, Inc. (Gurss), a general contractor from Lubbock, Texas. Construction on the restaurant began December 27, 1984. Gurss contracted with C & G, a Texas corporation authorized to transact business in New Mexico, to provide precast concrete materials. The first load of precast concrete materials was picked up at C & G's plant in Texas by an employee of Gurss and these materials were transported to Albuquerque in a Gurss truck. The second and final shipment of precast concrete items was delivered to the restaurant by an employee of C & G. The truck was unloaded by Gurss employees. Subsequently these materials were incorporated into the restaurant by workers of Gurss. The value of

the materials was in the amount of $8,217.82, which included a late charge of $121.45. Gurss paid $2,849.92 leaving a balance due of $5,367.90. No further payments were made to C & G. C & G filed a materialmen's lien pursuant to NMSA 1978, Section 48-2-6 (Repl.Pamp.1987), on December 4, 1985, and an amended lien on April 4, 1986.

In August 1985, the State of New Mexico closed down the restaurant construction site because Gurss was not licensed by the Construction Industries Division in New Mexico to do general contracting. Page and Wirtz Construction Company of Albuquerque took over from Gurss as general contractor in the fall of 1985 and worked on the project until December 1985. At that time Page and Wirtz ceased all work since it had not been paid by Gardski's. Gardski's Loft Restaurant was finished by a third contractor and opened for business in the spring of 1986.

Page & Wirtz filed a mechanics' and materialmen's lien foreclosure suit against C & G, El Paso, and the Gardski's defendants, including Las Pappas, Inc., to whom Gardski's had assigned all of its right, title and interest in the subject property. C & G filed a motion for summary judgment against the Gardski's defendants and El Paso; the Gardski's defendants filed a motion for summary judgment against C & G. C & G claimed it was entitled to have its materialmen's lien declared valid and to have it foreclosed; that NMSA 1978, Section 48-2-10.1(E) (Repl.Pamp.1987) did not bar its lien on the grounds that this statute applies only to residential construction; and that in the event the statute applies to non-residential construction, it is unconstitutional. Further, C & G argued it was entitled to the reasonable value of its materials used in the construction of the restaurant under a theory of quantum meruit. The Gardski's defendants in their motion maintained that C & G was barred from foreclosing its lien based on Section 48-2-10.1(E), and that quantum meruit was not an appropriate remedy for material suppliers under New Mexico law.

The district court denied C & G's motion finding that there was a question of fact whether C & G was a subcontractor or a material supplier, and under New Mexico law, a contractor or subcontractor must be licensed, NMSA 1978, § 60–13–12 (Repl. Pamp.1984 & Cum.Supp.1988), to bring an action in any court of the state, NMSA 1978, § 60–13–30 (Repl.Pamp.1984 & Cum. Supp.1988). The district court granted the Gardski's defendants' and El Paso's motion finding that Section 48–2–10.1(E) prohibits lien claims by material suppliers when the general contractor is not licensed by the State of New Mexico, and that, because C & G delivered materials to an unlicensed general contractor, it could not avail itself of the remedy of quantum meruit. C & G appeals the order of the district court.

This appeal by C & G involves the same issues set forth in its motion for summary judgment. Only El Paso filed an answer brief in which it addresses the validity of C & G's lien and the priority of El Paso's mortgage compared to this lien.

▪ The gist of this appeal is whether subsection E of Section 48–2–10.1 precludes persons who provide labor or materials to an unlicensed original contractor from filing a materialmen's lien against nonresidential property. C & G provided precast concrete materials to Gurss, a contractor who is not licensed in the State of New Mexico. Subsection E states:

Notwithstanding the provisions of 48–2–6 NMSA 1978 [time for filing mechanics' and materialmen's liens], no person shall be entitled to file a lien if the person to or for whom he provided labor or materials was an original contractor who was required to be but was not licensed as a general contractor by the construction industries division.

In construing a statute, a reviewing court's concern is to determine and give effect to the intent of the legislature. *State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (Ct.App.1988). This court will read the entire statute as a whole so that each provision may be considered in its relation to every other part and produce a harmonious whole. *Id.; State ex rel. Newsome v. Alarid*, 90 N.M. 790, 794, 568 P.2d 1236, 1240 (1977). In interpreting Section 48–2–10.1, we stated:

[T]he court must ascertain and give effect to the intention of the legislative, which is to be determined primarily from the language used in the statute as a whole. * * * [W]e must construe each part of the act in connection with every other part so as to produce a harmonious whole.

*Sundance Mechanical & Util. Corp. v. Armijo*, 106 N.M. 249, 250–51, 741 P.2d 1370, 1371–72 (1987) (*Sundance*) (citations omitted).

We construed subsections A and B of Section 48–2–10.1 in *Aztec Wood Interiors, Inc. v. Andrade*, 104 N.M. 45, 716 P.2d 236 (1986) (*Aztec*) and in *Sundance*. Both cases involved owners of a residential unit containing four or fewer units. This court averred that Section 48–2–10.1 discharges liens filed by original contractors or subcontractors after full payment is made by the owner of a residential property of no more than four units unless proper notice under subsection B is given to the owner by the original contractor and a reduced twenty-day filing period is activated. *Sundance*, 106 N.M. at 251 & 252, 741 P.2d at 1372 & 1373; *Aztec*, 104 N.M. at 46 & 47, 716 P.2d at 237 & 238. We also observed in *Aztec* and reiterated in *Sundance* that the purpose of Section 48–2–10.1 is to protect an innocent purchaser from materialmen's liens once final payment was made to the contractor and to place upon the subcontractor a duty to file a lien prior to final payment. *Aztec*, 104 N.M. at 47, 716 P.2d at 238; *Sundance*, 106 N.M. at 252, 741 P.2d at 1373. Notwithstanding subsection B's exclusion of the language, "a residence containing not more than four dwelling units," we interpreted this subsection to pertain to residential property owners of four or fewer dwelling units like subsection A which includes that language. *See Sundance* and *Aztec*.

In the present case, C & G supplied materials to Gurss, a general contractor not licensed by the State of New Mexico. The materials were used in the construction of Gardski's Loft restaurant. When C & G was not completely paid for these materials, it filed a materialmen's lien upon the restaurant pursuant to New Mexico's lien statute, NMSA 1978, Section 48–2–2 (Repl. Pam.1987). In relevant part that statute states:

> Every person * * * furnishing materials to be used in the construction, alteration or repair of any * * * building * * * has a lien upon the same for * * * materials furnished * * * whether * * * furnished at the instance of the owner of the building or other improvement, or his agent, and every contractor * * * shall be held to be the agent of the owner for the purposes of this section.

The trial court found that because C & G supplied materials to an unlicensed contractor, see NMSA 1978, § 48–2–10.1(E), C & G was precluded from filing a materialmen's lien under Section 48–2–2. We disagree and enter judgment in favor of C & G on its lien.

Subsection E along with subsections B, C, D, and F of Section 48–2–10.1 omit the language "a residence containing not more than four dwelling units," which is included in subsection A. Nonetheless we stated in *Aztec* and in *Sundance* that the purpose of Section 48–2–10.1 is to protect an innocent owner of a residential property containing no more than four dwelling units from materialmen's liens once final payment is made to the contractor and to place upon the subcontractor a duty to file its lien prior to final payment. Subsection E extends a protection to owners of residential real property who have dealt with unlicensed general contractors so that subcontractors and materialmen, rather than homeowners, bear the risks of dealing with unlicensed contractors. We hold that the protections of Section 48–2–10.1 are limited to owners of residences containing no more than four dwelling units, and do not apply to owners of nonresidential property. Subsection E does not preclude C & G from filing a valid materialmen's lien under Section 48–2–2 on Gardski's Loft restaurant. Because of our disposition of C & G's lien, we do not address the claim of quantum meruit.

Questions of fact, however, exist on the relative priorities of the various liens and interests on the restaurant property and on the amount of attorney's fees to be awarded C & G, pursuant to NMSA 1978, Section 48–2–14 (Repl.Pamp.1987), for trial and appellate costs. Summary judgment is not appropriate when the facts before the court are insufficiently developed or where further factual resolution is essential for determination of the legal issues involved. *National Excess Ins. Co. v. Bingham*, 106 N.M. 325, 328, 742 P.2d 537, 540 (Ct.App. 1987).

We reverse the district court's order of summary judgment and enter judgment in favor of C & G on the validity of its materialmen's lien. We remand to the district court to determine the priority of all liens and interests in the subject property and to determine the amount of attorney's fees to be awarded C & G for its trial and appellate costs.

IT IS SO ORDERED.

SOSA, C.J., and SCARBOROUGH, J., concur.